# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STEVE STRAUSS d/b/a CLASSIC TREE CARE, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ANGIE'S LIST, INC.,**<br><br>Defendant. | Case No. 2:17-CV-02560-HLT-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Steve Strauss seeks to alter or amend the Court's judgment dismissing his putative class action against Defendant Angie's List, Inc., which asserted violations of the Lanham Act, 15 U.S.C. § 1501, *et seq.*, and the Kansas Consumer Protection Act ("KCPA"), § 50-623, *et seq.* Doc. 93. Plaintiff contends the Court "misapprehended some of the key facts, [Plaintiff's] position, and/or the controlling law." Doc. 94 at 2. Because Plaintiff Strauss has failed to demonstrate that the Court committed clear error or that manifest injustice will result absent alteration or amendment of the Court's judgment, the Court denies Plaintiff Strauss's motion.

## I. FACTUAL AND PROCEDURAL HISTORY

The factual and procedural background is set forth in detail in the Court's November 1, 2018 Memorandum and Order (Doc. 85) granting Defendant's motion to dismiss and denying Plaintiff Strauss's motion to amend his complaint (the "Dismissal Order") and is not repeated at length herein. In summary, Plaintiff Strauss alleged that Defendant engages in false advertising, primarily through its website, which it markets to consumers as a forum for the viewing and posting of first-hand, consumer-generated reviews of service providers. According to Plaintiff Strauss, Defendant represents to consumers that a search of Defendant's website will

return a list of potential service providers, in ranked order, based on the first-hand experience of other consumers. In reality, however, the order in which Defendant displays service providers within search results is substantially affected by whether a service provider pays Defendant to advertise on Defendant's website. Defendant lists advertising (i.e., fee-paying) service providers at the top of search results and may list them above non-advertising (i.e., non-fee-paying) service providers—even if the non-advertising service providers have higher ratings and better reviews. But Defendant does not make this clear to consumers and consumers believe the rankings are based solely on consumer-generated ratings and reviews.

Plaintiff Strauss owns a tree care business in Kansas. He has been aware of Defendant's advertising services and his ability to affect his ranking in search results on Defendant's website if he paid for such services since 2005. Plaintiff Strauss took advantage of that practice by advertising with Defendant from 2005 through 2016 and, during that time, he paid Defendant more than $200,000.00 to appear higher in search results. Eventually, in the fall of 2016, Plaintiff Strauss and Defendant had a falling out and Plaintiff Strauss quit advertising on Defendant's website. Plaintiff Strauss alleged that Defendant subsequently posted statements on its website that falsely described, disparaged, and defamed Plaintiff Strauss and his business and services.

Plaintiff Strauss's Original Complaint asserted: (1) a Lanham Act false advertising claim; and (2) a KCPA unfair, deceptive, or unconscionable practices claim. He also sought class certification of nationwide (Lanham Act) and Kansas-based (KCPA) claims. Defendant moved to dismiss the Original Complaint under Rule 12(b)(6) on numerous grounds, including laches (Lanham Act claims), statute of limitations (KCPA claims), and failure to plausibly plead one or more essential elements of the claim (Lanham Act and KCPA claims).

Almost two months after Defendant's motion to dismiss was fully briefed, on March 12, 2018, Plaintiff Strauss sought leave to amend his original complaint to join an additional plaintiff, Proposed-Plaintiff David Garner. The proposed amended complaint, however, was nearly identical to the original complaint. It merely added specific factual allegations concerning Proposed-Plaintiff Garner's personal experience with Defendant and added an individual claim on Proposed-Plaintiff Garner's behalf under the Maryland Consumer Protection Act, Md. Code Ann. § 13-301, *et seq*. The amended complaint did not alter any allegations against Defendant with respect to Plaintiff Strauss. Defendant opposed Plaintiff Strauss's request to amend, arguing largely that the amendment did not address the shortcomings of the original complaint and would therefore be futile as to Plaintiff Strauss, and that the Court would then lack jurisdiction over the only remaining plaintiff, Proposed-Plaintiff Garner.

On November 1, 2018, the Court entered the Dismissal Order, dismissing the vast majority of Plaintiff Strauss's Lanham Act and KCPA claims as time-barred under either a laches (Lanham Act) or statute of limitations (KCPA) theory. The remaining Lanham Act and KCPA claims were dismissed for failure to plausibly plead at least one essential element of each claim. The Court also denied Plaintiff Strauss's motion to amend as futile because the proposed amended complaint contained the same allegations with respect to Plaintiff Strauss's claims against Defendant and, thus, it did not remedy the original complaint's shortcomings.[1] Plaintiff Strauss now asks the Court

---

[1] The Court also concluded that, upon dismissal of all claims by Plaintiff Strauss against Defendant, it would lack personal jurisdiction over Defendant for purposes of Proposed-Plaintiff Garner's claims and the proposed amended complaint was therefore futile in its entirety. Plaintiff Strauss does not dispute the Court's conclusion that it would lack jurisdiction over Proposed-Plaintiff Garner's claims absent Plaintiff Strauss. *See generally* Doc. 94. Rather, he requests that the Court permit the filing of the proposed amended complaint (and the joinder of Proposed-Plaintiff Garner as a party to the case) if the Court otherwise determines that it erred in dismissing Plaintiff Strauss's claims against Defendant. *Id.* at 10.

to reconsider the dismissal of his Lanham Act claims. *See generally* Doc. 94. He does not seek reconsideration of the dismissal of his KCPA Claims. *Id.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment no later than twenty-eight days after entry of judgment. "Three major grounds that justify reconsideration under Rule 59(e) are: (1) an intervening change in controlling law, (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Jones v. Colvin*, 2015 WL 5883910, at *2 (D. Kan. 2015) (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)). "[A] motion to alter or amend that reiterates issues originally raised [in prior briefing] and that seeks to challenge the legal correctness of the court's judgment by arguing that the court misapplied the law or misunderstood the litigant's position is correctly asserted pursuant to [Rule 59(e)]." *Colvin*, 2015 WL 5883910, at *2. But it is inappropriate re-argue an issue previously addressed by the court when the motion merely advances new arguments or supporting facts that were available at the time of the original briefing. *Paraclete*, 204 F.3d at 1012 (stating that a motion to reconsider is not a proper vehicle through which to "revisit issues already addressed or advance arguments that could have been raised in prior briefing").

## III. ANALYSIS

Plaintiff Strauss assures the Court he "does not intend to simply repeat or rehash [his] previous arguments." Doc. 2. Rather, he contends the Court made five critical errors in dismissing Plaintiff Strauss's claims, each based on the Court's misapprehension of some of the key facts, Plaintiff Strauss's position, and/or the controlling law. Doc. 94 at 2. The Court disagrees. Plaintiff Strauss's motion to reconsider, in reality, raises new arguments that could have been, but were not,

4

raised in prior briefing. These new arguments are not appropriate for consideration on a motion to amend or alter judgment. Moreover, even if the Court considers the merits of Plaintiff Strauss's newly-raised arguments, they are unavailing. Plaintiff Strauss has failed to demonstrate that the Court committed clear error or that manifest injustice will result absent alteration or amendment of the Dismissal Order.[2]

### A. Laches in Rule 12(b)(6) Context

Plaintiff Strauss first contends that the Court erred in dismissing his Lanham Act claims as time barred under the doctrine of laches because "such an equitable affirmative defense requires factual determinations which cannot be made in connection with a Rule 12(b)(6) motion to dismiss." In short, Plaintiff Strauss argues the bare allegations in the original complaint provided insufficient information from which the Court could determine whether the required elements of the affirmative defense of laches were met. The Court rejects this argument for two reasons.

First, Plaintiff Strauss waived this argument by not raising it in prior briefing. Plaintiff Strauss's response to Defendant's affirmative defense of laches was two pages, inclusive of the point-header. He offered two unsupported arguments—both of which addressed only the issue of which state's statute of limitations the Court should use as a guide when conducting the laches analysis. Plaintiff Strauss did not contend—as he does now—that Defendant could not raise an affirmative defense such as laches on a Rule 12(b)(6) motion to dismiss or that the original complaint provided the Court insufficient information from which to analyze the laches defense.

As noted above, a Rule 59(e) motion to reconsider is not the appropriate vehicle for parties to raise new arguments which could have been, but were not, presented in prior briefing. *Paraclete*,

---

[2] Plaintiff Strauss does not contend that there has been a change in the controlling law or that new evidence is available that could not have been obtained previously through the exercise of due diligence. *See generally* Doc. 94.

204 F.3d at 1012. Arguments not waived in a party's initial briefing are waived and will not be considered on a motion to reconsider. *See e.g.*, *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (recognizing that an argument first waived in a reply brief is waived and declining to consider it on a motion to reconsider); *Coleman v. B–G Maint. Mgmt.*, 108 F.3d 1199, 1205 (10th Cir. 1997) (holding that "[i]ssues not raised in the opening brief are deemed abandoned or waived"); *Logsdon v. AT&T Commc'ns of Sw., Inc.*, 2003 WL 1872993, at *1 n.1 (D. Kan. 2003) (declining to consider argument raised for the first time in a motion for reconsideration); *Colvin*, 2015 WL 5883910, at *2-4 (rejecting new arguments that could have been raised in prior briefing). On this basis alone, the Court finds that Plaintiff Strauss has waived the argument that the Court could not rule on Defendant's affirmative defense of laches in the context of a Rule 12(b)(6) motion to dismiss.

Second, contrary to Plaintiff Strauss's suggestion, there is no *per se* rule that affirmative defenses are inappropriate for consideration on a Rule 12(b) motion to dismiss. The Tenth Circuit has recognized that, "[t]o be sure, on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).[3] This situation arises when "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Id.* (citation omitted); *see also Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)]."). The same standard applies to the affirmative defense of laches. If the elements of laches appear on the face of the complaint, the defendant may move for—and the court may

---

[3] Plaintiff Strauss actually cites the *Fernandez* case in his motion for reconsideration, but fails to acknowledge the portion of the Tenth Circuit's opinion that recognizes that there are circumstances where it is plain from the face of the complaint that a Rule 12(b)(6) dismissal based on an affirmative defense is appropriate. *See* Doc. 94 at 3-5.

6

grant—dismissal under Rule 12(b)(6). *See*, e.g., *Landrum v. Tyson*, 2011 WL 13217114, at *1-2 (C.D. Cal. 2011) (granting Rule 12(b)(6) dismissal where all elements of laches defense were apparent from the face of the complaint); *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 366 F. Supp. 2d 887, 907-09 (D. Ariz. 2005) (same); *Solow Bldg. Co., LLC v. Nine West Grp., Inc.*, 2001 WL 736794, at *3-6 (S.D.N.Y. 2001) (same).[4] That is exactly what happened here.

When considering Defendant's Rule 12(b)(6) motion to dismiss, including Defendant's affirmative defense of laches, the Court limited its analysis and findings to the facts contained in the original complaint. The Court did not consider any facts or documents outside the four corners of the original complaint.[5] The Court considered the facts in the light most favorable to Plaintiff Strauss, and drew all inferences in his favor. Those facts were numerous, detailed, and clear. There was nothing for the Court to misapprehend. Unfortunately for Plaintiff Strauss, he simply pled himself out of court.

Plaintiff Strauss's own allegations established both elements of the laches defense: (1) lack of diligence by the plaintiff; and (2) prejudice to the defendant. *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1091 (10th Cir. 2014). It was apparent from the face of the original complaint

---

[4] Other courts have also recognized that consideration of a laches defense on a Rule 12(b)(6) motion to dismiss is permissible, but have concluded the specific complaint before them did not allege facts sufficient to support one or more of the elements of the defense. *See, e.g.*, *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 351-52, 355-56 (5th Cir. 2011) (recognizing that a Rule 12(b)(6) dismissal would be proper if "it is evident from the [complaint] that the action is barred" but concluding the complaint did not facially establish all the elements necessary for the laches defense); *Suggs v. United States*, 256 F. App'x 804, 805 (7th Cir 2007) (stating that "a plaintiff may plead himself out of court by alleging facts sufficient to establish an affirmative defense" but concluding that the plaintiff did not allege all the required elements for the laches defense); *LB Rests. Sys. LLC v. Latin House Grill, LLC*, 2013 WL 12094885, at *2 (S.D. Fla. 2013) (recognizing the possibility that laches may be properly asserted on a motion to dismiss when it is apparent on the face of the complaint); *Abbot Labs. v. CVS Pharmacy, Inc.*, 2001 WL 777060, at *3 (N.D. Ill. 2001) (same).

[5] To be clear, Defendant attached exhibits to its motion to dismiss and made references to those exhibits in its briefing. The Court, consistent with well-established standards for considering a motion to dismiss, considered only the well-pleaded facts in the operative complaint, and assumed the truth of those facts for purposes of analyzing Defendant's motion to dismiss. *See* Doc. 85 at 4.

that Plaintiff Strauss became aware of Defendant's business practices in 2005 but waited more than a decade to file suit. In fact, he not only knew about Defendant's business practices during those ten years, but also took advantage of them in the hope he could profit from them himself. It is clear from the face of the complaint that Plaintiff Strauss lacked diligence in pursuing his claims and that—particularly given his decade-long participation in the very business scheme he now maligns—his delay was inexcusable.

Likewise, the prejudice to Defendant was apparent on the face of the original complaint. Plaintiff Strauss's own allegations detailed how—during the time period in which Plaintiff Strauss delayed in filing suit—Defendant's business model became more focused (and financially reliant) on the business practice Plaintiff Strauss first participated in, and later belatedly attacked. The original complaint details how Defendant's business model and profits changed during the time period Plaintiff Strauss delayed in filing suit, specifically alleging drastic increases in revenue as Defendant became more focused on relationships with advertising (fee-paying) service providers and less focused on consumers. The Court looked no further than these allegations—on the face of the complaint—to determine that economic prejudice would result to Defendant if the Court permitted Plaintiff Strauss to pursue his stale Lanham Act claims. *See Biodiversity Conservation*, 762 F.3d at 1091 (stating the "prejudice" element is met where the defendant expends substantial time and effort during the delay that the plaintiff's claim could defeat).

The cases Plaintiff cites from other courts of this district concluding the affirmative defense of laches could not be considered on a Rule 12(b)(6) motion to dismiss are inapposite. In those cases—unlike this case—analysis of the defense required the court to look at documents and information outside the four corners of the complaint to determine whether one or more of the elements of laches was met. *See Jordan v. Sprint Nextel Corp.*, 3 F. Supp. 3d 917, 929 (D. Kan.

2014) (declining to consider the defendants' laches argument because it was dependent on statements taken from administrative proceedings and administrative orders that were not provided to the court and not included in the allegations contained in the plaintiff's complaint); *Williams v. Clarence M. Kelley Det. Servs., Inc.*, 2012 WL 6085121, at *2 (D. Kan. 2012) (declining to consider the defendants' laches defense because defendants made factual assertions . . . "which invite[ ] the court to decide defendants' Rule 12(b)(6) motion on the basis of matters outside the pleadings"). Here, the Court did not face the same challenge. As discussed above, Plaintiff Strauss's original complaint alleged all the elements of Defendant's affirmative defense of laches. It was, therefore, appropriate for Defendant to raise the defense in a Rule 12(b)(6) motion to dismiss, and the Court did not err in granting dismissal based on the affirmative defense of laches where it was apparent on the face of the complaint. No clear error was committed and no manifest injustice has occurred.

   B.   **Doctrine of Unclean Hands**

As his second point of error, Plaintiff Strauss contends the Court erred in failing to recognize that laches, as an equitable defense, is subject to the equitable principle of unclean hands and that, "[n]umerous courts have recognized that in a Lanham Act case, the defense of laches is not available to a defendant who has violated the Act intentionally, willfully, or deliberately." Doc. 94 at 5. The Court also rejects this argument for two reasons.

First, Plaintiff Strauss has waived this argument by not raising it in prior briefing. In his response to Defendant's motion to dismiss, Plaintiff Strauss did not contend that the defense of laches was unavailable to Defendant based on the equitable principle of unclean hands. A motion to reconsider is not the appropriate vehicle for Plaintiff to raise this argument, which could have been raised in his response to Defendant's motion to dismiss. *See Paraclete*, 204 F.3d at 1012. On this basis alone, the Court finds that Plaintiff Strauss has waived the argument that the doctrine of

unclean hands prohibited Defendant from relying on the defense of laches. *See e.g.*, *Minshall*, 323 at 1288; *Coleman*, 108 F.3d at 1205; *Logsdon*, 2003 WL 1872993, at *1 n.1; *Colvin*, 2015 WL 5883910, at *2-4.

Second, Plaintiff Strauss improperly conflates the threshold requirements for pleading a knowing and intentional misrepresentation to assert a Lanham Act false advertising claim with the higher standard for establishing unclean hands. "When a plaintiff brings a false advertising claim under the Lanham Act . . . the plaintiff must show that a defendant did more than make the challenged claims knowing they were false to defeat a laches defense [on the basis of unclean hands]." *Albion Int'l, Inc. v. Am. Int'l Chem., Inc.*, 2012 WL 3776866, at *13 (D. Utah 2012) (citing *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841-42 (9th Cir. 2002)). "To conclude otherwise would be effectively to preclude the application of laches whenever a dispute of fact regarding the merits of a Lanham Act claim existed because . . . conceivably all suits involving Lanham Act claims could involve accusations of fraudulent or deceptive conduct." *Jarrow Formulas*, 304 F.3d at 841-42 (quoting *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 826 (7th Cir.1999) (internal quotes omitted)). To rely on the doctrine of unclean hands to escape laches, the plaintiff must establish that the defendant "acted with a fraudulent intent in making the challenged claims." *Id.* at 842; *see also Albion Int'l*, 2012 WL 3776866 at *13.

Plaintiff Strauss argues only that, because his complaint included allegations that Defendant engaged in knowing and intentional misrepresentations, "it cannot be determined whether the defendant is entitled to the benefit of a laches defense." Doc. 94 a 6. Allegations of knowing and intentional misrepresentations absent additional allegations of fraudulent intent, however, do not support the application of unclean hands to preclude a laches defense. The Court

did not err in granting dismissal based on the affirmative defense of laches. The Court did not commit clear error and no manifest injustice has occurred.

## C. Continuing Violations Theory

Plaintiff Strauss's third and fourth points of error involve the Court's decision not to apply the continuing violations theory in this case. He contends the Court incorrectly concluded that: (1) he waived any argument supporting application of the continuing violations theory; and (2) application of the continuing violations theory is disfavored in the context of laches and Lanham Act false advertising claims. The Court disagrees.

Plaintiff Strauss contends that he did not waive any argument supporting application of the continuing violations theory for three reasons. First, Plaintiff Strauss contends laches is an affirmative defense and Plaintiff Strauss was not required to anticipate that defense and preemptively include in his complaint any allegations that Defendant's violations were continuing. Second, he argues his complaint nonetheless does include allegations that Defendant's violations were continuing. And, third, Plaintiff Strauss contends that a statement in the final paragraph of his memorandum in opposition to Defendant's Motion to Dismiss indicated Plaintiff Strauss intended to argue that Defendant's violations were continuing in nature. These arguments are unavailing.

Plaintiff Strauss did allege facts indicating Defendant's conduct was continuing in nature. But in his response to Defendant's motion to dismiss, Plaintiff did <u>not</u> raise or discuss the <u>legal theory</u> of continuing violations. Plaintiff Strauss apparently adopts the position that, because his complaint included allegations that may have supported a legal theory or argument, the argument was sufficiently "raised" to avoid waiver. But it is not the Court's role or responsibility to serve as Plaintiff Strauss's attorney and search the record to construct arguments. Plaintiff certainly could have asserted the theory in his response to Defendant's motion to dismiss, but failed to do so and,

11

thus, waived the argument. *See e.g.*, *Minshall*, 323 at 1288; *Coleman*, 108 F.3d at 1205; *Logsdon*, 2003 WL 1872993, at *1 n.1; *Colvin*, 2015 WL 5883910, at *2-4.

Even if Plaintiff Strauss had properly raised the continuing violations theory, the Court was correct in concluding that its application is disfavored in the context of laches and Lanham Act false advertising claims. In reaching this conclusion, the Court relied on three cases considering the continuing violations theory in the context of a laches defense to Lanham Act false advertising claims. *See Jarrow Formulas*, 304 F.3d at 837; *Hot Wax*, 191 F.3d at 821-22; *Icon Health & Fitness v. Nautilus Grp.*, 2004 WL 6031124, at *19-20 (D. Utah 2004). Plaintiff Strauss does not address these cases. Instead, he relies on two Tenth Circuit cases and a District of Kansas case that are not on point.

Plaintiff Strauss first cites *Brunswick Corp. v. Spinit Reel Co*, 832 F.2d 513, 526 (10th Cir. 1987), for the proposition that "[trademark] infringement is a continuous wrong and, as such, gives rise to a claim for relief so long as the infringement persists." Context, however, is key. The Tenth Circuit was not considering the continuing violations theory or its application to a laches defense. *Id.* Rather, the statement was made in the context of a determination of an award of damages where the defendant's infringing conduct continued after trial but before final judgment. *Id.*

Plaintiff Strauss's citation of *Tiberi v. Cigna Corp.*, 89 F.3d 1423 (10th Cir. 1996), is also inapposite. In *Tiberi*, the Tenth Circuit considered the application of the continuing violations doctrine to the statute of limitations in the context of common law contract and tort claims and alleged violations of the New Mexico Unfair Trade Practices Act. *Id.* at 1430-31. It did not consider or discuss the application of the continuing violations theory to a laches defense in the context of a Lanham Act false advertising claim. *Id.* Moreover—even if context is ignored—the Tenth Circuit specifically stated that "the doctrine cannot be employed where the plaintiff's injury

is 'definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress.'" *Id.* (quoting *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir.1992)). As discussed above, *supra* at Part III.A., it is evident from the face of the complaint that Plaintiff Strauss new about Defendant's business practices of which he now complains for more than a decade and nothing prevented him from filing suit. Under these facts and Plaintiff Strauss's own cited authority, the continuing violations theory does not apply. *Id.*

Finally, Plaintiff Strauss relies on *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 723 F. Supp. 567, 570 (D. Kan. 1989). In *Manildra*, the district court concluded that "[i]n determining when a cause of action accrues for a continuous violation, the general rule is that a statute of limitation does not begin to run on a continuing wrong until the wrong is 'over and done with.'" *Id.* (quoting *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir.1983)). Both the *Manildra* opinion and the Seventh Circuit case it relies on, however, have been criticized and other courts have declined to follow or extend application of the continuing violations doctrine. *See, e.g.*, *United Cities Gas Co. v. Brock Exploration Co.*, 984 F. Supp. 1379, 1388-89 (D. Kan. 1997) (rejecting *Manildra* because it "articulat[ed] no rationale for its decision" and recognizing that "courts generally have not extended the continuing wrong theory . . . and often have rejected the theory as a matter of law"); *Newell v. Kmart Corp.*, 1998 WL 230966, at *6 n.5 (D. Kan. 1998) (citing *Brock Exploration*, 984 F. Supp. at 1388-89) ("The viability of the 'continuing wrong' doctrine has been called into serious question. Indeed, the majority of courts have rejected the theory, including the author of *Manildra*."); *In re Indep. Servs. Orgs. Antitrust Litig.*, 964 F. Supp. 1469, 1478 (D. Kan. 1997) (recognizing that courts generally have not extended the continuing wrong theory beyond the facts of *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir.1983)).

In short, Plaintiff Strauss waived any argument that the continuing violations theory should apply to Defendant's affirmative defense of laches by failing to raise the argument in prior briefing. And even if the Court considers the arguments now raised and authorities now cited by Plaintiff Strauss, they do not change the Court's previous conclusion that the continuing violations doctrine does not apply. The Court did not commit clear error and no manifest injustice has occurred.

### D.  Third Prong of *Proctor & Gamble* Test

As his fifth and final point of error, Plaintiff Strauss contends the Court erred in concluding that Plaintiff Strauss failed to include in his complaint allegations sufficient to satisfy the third prong of the test for Lanham Act false advertising claims articulated by the Tenth Circuit in *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000). Prong three requires that plaintiff to establish that the defendant's representations were made for the purpose of influencing consumers to buy the defendant's goods or services. *Id.*

Plaintiff Strauss contends that the complaint contains "several express allegations that consumers made their decision to pay to become a member of [Defendant's website] based on [Defendant's] false and misleading representations." Doc. 94 at 9-10 (citing various paragraphs within the complaint). But Plaintiff Strauss's citation to these allegations is unavailing because these allegations relate only to Plaintiff Strauss' Lanham Act claims which the Court determined were barred by laches. The Court concluded that Plaintiff Strauss's only Lanham Act claims that were not barred by laches were based on Defendant's alleged representations set forth in a single paragraph—paragraph 52—of the original complaint. In paragraph 52, Plaintiff Strauss alleged that in 2016, Defendant falsely described, disparaged, and defamed Plaintiff Strauss and his business and services by declaring to consumers who search Defendant's website that: (1) Plaintiff Strauss has "no rating or [consumer] reviews"; (2) has not met certain "criteria" to be listed on

Defendant's website; and (3) has no "local offers" to extend to consumers (the "2016 Website Statements"). Doc. 1 ¶ 52.

Because Plaintiff Strauss's timely Lanham Act claims were confined to those based on the 2016 Website Statements, prong three of the *Proctor & Gamble* test could only be satisfied if Plaintiff Strauss alleged that the 2016 Website Statements were made for the purpose of influencing consumers to buy the Defendant's goods or services.[6] The Court correctly concluded that the 2016 Website Statements, even when considered in the light most favorable to Plaintiff Strauss, cannot be construed as having been made for purposes of influencing consumers to buy Defendant's goods or services—i.e., a consumer membership to Defendant's website or Defendant's advertising services. It is reasonable to infer that Defendant's 2016 Website Statements influenced consumers to purchase the goods or services of a tree care business other than Plaintiff Strauss, but that does not satisfy the *Proctor & Gamble* test.[7] The Court did not commit clear error and no manifest injustice has occurred.

### E. Motion for Leave to Amend

In addition to seeking alteration or amendment of the Dismissal Order, Plaintiff Strauss also requests that, in the event the Court grants his motion to amend and reinstates the case, he be permitted to file his previously-submitted proposed amended complaint. Because the Court denies Plaintiff Strauss's motion to amend the Dismissal Order, the Court denies this request as moot.

---

[6] The purpose of Defendant's other representations alleged in the complaint—including those Plaintiff Strauss cites in his motion to amend—have no relevance because any Lanham Act false advertising claims based on those representations are time-barred.

[7] Plaintiff Strauss does not argue that the 2016 Website Statements were made for purposes of influencing consumers to buy Defendant's goods or services and therefore satisfy the *Proctor & Gamble* test. He relies only on alleged representations the Court has determined cannot be the basis of his Lanham Act false advertising claims because they are barred by laches. *See* Doc. 94 at 9-10.

**IV. CONCLUSION**

Plaintiff Strauss's motion raises new arguments that are not appropriate for consideration on a motion to amend or alter judgment. Moreover, even if the Court considers the merits of Plaintiff Strauss's newly-raised arguments, they do not change the Court's conclusions. Plaintiff Strauss has failed to demonstrate that the Court committed clear error or that manifest injustice will result absent alteration or amendment of the Dismissal Order.

THE COURT THEREFORE ORDERS that Plaintiff's Motion to Amend or to Alter Judgment (Doc. 93) is DENIED.

IT IS SO ORDERED.

DATED: January 31, 2019  */s/ Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE