PUBLISH

UNITED STATES COURT OF APPEALS

TENHN CIRCUIT

FILED
United States Court of Appeals
Tenth Circuit

**March 9, 2020**

Christopher M. Wolpert
Clerk of Court

| | |
|---|---|
| STEVE STRAUSS, d/b/a Classic Tree Care, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> ANGIE'S LIST, INC., <br><br> Defendant - Appellee. | No. 19-3025 |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:17-CV-02560-HLT-TJJ)

Robert J. Bjerg, Colantuono Bjerg Guinn Keppler, LLC, Overland Park, Kansas, for Appellant.

J. Gordon Cooney, Jr., Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania (Matthew R. Brunkhorst, Armstrong Teasdale LLP, Kansas City, Missouri; Franco A. Corrado, Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania; J. Kevin Fee and Michael E. Kenneally, Morgan, Lewis & Bockius LLP, Washington, DC, with him on the brief), for Appellee.

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **CARSON**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Plaintiff, Steve Strauss, brought claims against Defendant, Angie's List, Inc., alleging violations of the Lanham Act. Strauss appeals from an order of the district court dismissing his complaint on the basis that it fails to identify any statements made by Angie's List that qualify as commercial advertising or promotion within the meaning of the Lanham Act's false advertising provision. *See* 15 U.S.C. § 1125(a)(1)(B). He maintains the district court erred by analyzing his claims under the test adopted by this court in *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273 (10th Cir. 2000) (adopting a four-part test for determining what constitutes commercial advertising or promotion).

Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the dismissal of Strauss's Lanham Act claims.

## II. BACKGROUND

During the relevant period,[1] Strauss owned a tree trimming/removal business called Classic Tree Care ("Classic"). Defendant Angie's List is an internet-based consumer ratings forum on which fee-paying members can view and share reviews of local businesses. According to Strauss, the membership

---

[1]We provide only a summary of the factual background of the parties' dispute. The district court's orders contain a complete recitation of the factual allegations in Strauss's complaint. *See Strauss v. Angie's List, Inc.*, No. 2:17-CV-02560, 2019 WL 399910, *1-2 (D. Kan. Jan. 31, 2019); *Strauss v. Angie's List, Inc.*, No. 2:17-CV-02560, 2018 WL 5722561, *2-4 (D. Kan. Nov. 1, 2018).

agreement between Angie's List and its members leads members to believe that businesses are ranked by Angie's List according to unedited consumer commentaries and endorsements when, in reality, the order in which businesses are ranked is actually based on the amount of advertising the business buys from Angie's List.  He alleges businesses are told they will be ranked more favorably on the website if they pay advertising and referral fees to Angie's List.

According to Strauss, from 2005 to 2016 he paid $200,000 in advertising services fees and coupon retention percentages to Angie's List "in an effort to appear higher" in search results.  The business relationship between Strauss and Angie's List, however, began to sour in 2013.  Strauss alleges he failed to appear in search results for a three-month period and then was "buried" in search-result listings even though he had numerous favorable reviews and a high rating from consumers.

In September 2017, Strauss filed a putative class action lawsuit against Angie's List, raising allegations that Angie's List engaged in false advertising in violation of § 45(a) of the Lanham Act, 15 U.S.C. § 1125.  He also alleged violations of the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. §§ 50-626 to 50-627.  He supported these claims with assertions Angie's List published false and misleading statements of fact about him and his business on its website.  Angie's List moved to dismiss Strauss's complaint on multiple

grounds, asserting, *inter alia*, the claims were time barred and the complaint failed to plausibly plead essential elements of the claims. The district court granted the motion as to nearly all of Strauss's claims, concluding the majority were time barred either under the doctrine of laches or under the state statute of limitations. *Strauss v. Angie's List, Inc.*, No. 2:17-CV-02560, 2018 WL 5722561, *11 (D. Kan. Nov. 1, 2018); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n.15 (2014) (noting the Lanham Act does not contain a statute of limitations but "expressly provides for defensive use of equitable principles, including laches" (quotation omitted)). The only claims not time-barred were based on statements Angie's List made on its website in 2016 (the "2016 Website Statements"). *Strauss,* 2018 WL 5722561, at *11. As to those claims, the district court concluded Strauss failed to plausibly plead that the statements were made in connection with "commercial advertising or promotion," an essential element of his Lanham Act claims. *Id.* at *14. The court also dismissed the KCPA claims because Strauss did not plausibly plead the required elements of reliance or causation.[2] *Id.* at *15.

Strauss filed a motion pursuant to Fed. R. Civ. P. 59(e) asking the district court to amend or alter its judgment. In the motion, he argued the district court

---

[2]The district court also denied Strauss's request for leave to amend his complaint, concluding amendment would be futile. *Strauss*, 2018 WL 5722561, at *16.

erred in determining his Lanham Act claims were barred by the doctrine of laches and that he failed to plausibly allege Angie's List made representations for the purposes of influencing consumers to buy Angie's List's goods or services. Strauss also challenged the court's determination that he had waived any argument based on a continuing violations theory. The district court denied the motion in an unpublished order. *Strauss v. Angie's List, Inc.*, No. 2:17-CV-02560, 2019 WL 399910, *1 (D. Kan. Jan. 31, 2019).

## III.   Discussion

As an initial matter, it is necessary to identify the scope of this appeal because many of the issues resolved by the district court are not before this court. In his opening brief, Strauss identifies the sole issue presented on appeal as whether he has plausibly pled that the alleged false representations made by Angie's List induced consumers to buy Angie's List's goods or services. He specifically states that he is not challenging the dismissal of either his KCPA claims or the Lanham Act claims that were dismissed as untimely. Thus, the only question before us is slightly narrower than articulated by Strauss. We will address only whether he has pleaded facially plausible Lanham Act claims based on the 2016 Website Statements.[3]

---

[3]Strauss also attempts to raise a vicarious liability argument that was not presented to the district court. Generally, this court does not consider arguments
(continued...)

We review de novo a district court's dismissal of a complaint for failure to state a claim. *Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the applicable standard, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted. We accept all well-pled factual allegations as true and view these allegations in the light most favorable to the nonmoving party." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quotation and citation omitted).

The only Lanham Act claims not time-barred are based on three statements Angie's List made on its website in 2016. According to allegations in Strauss's

---

³(...continued)
raised for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Because Strauss has not addressed whether we should exercise discretion to address these arguments, we conclude they are not properly before us. *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720-22 (10th Cir. 1993) (discussing the "unusual circumstances" in which discretion should be exercised in favor of considering issues not passed on below).

complaint, Angie's List stated that his business (1) had no consumer ratings or reviews; (2) had not met the criteria set by Angie's List for inclusion on its website; and (3) had no local offers to extend to consumers.  To prevail on Lanham Act claims arising from these statements, Strauss must show "(1) that [Angie's List] made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff."  *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002) (quotation omitted).  The district court concluded Strauss failed to plausibly plead the first of these requirements because he could not show the statements were made in connection with the commercial advertising or promotion of Angie's List's products.

This court has adopted a four-part test to determine whether a statement qualifies as "commercial advertising or promotion" for purposes of a Lanham Act false advertising claim.  To constitute commercial advertising or promotion under § 43(a)(1)(B) of the Lanham Act, the statements identified by Strauss "must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods

or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Proctor & Gamble Co.*, 222 F.3d at 1273-74 (adopting a test first set out in *Gordon & Breach Sci. Publishers, S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)). The district court concluded Strauss's complaint failed to plausibly allege that the 2016 Website Statements were made for the purpose of influencing consumers to buy Angie's List's goods or services. At best, the court concluded, it could be reasonably inferred that the statements were made to influence consumers to purchase goods and services from a tree care business other than the one owned by Strauss. On appeal, Strauss does not argue Angie's List made the 2016 Website Statements in an attempt to influence consumers to purchase goods and services from Angie's List or that the district court misapplied the *Proctor & Gamble* test as to those three statements.[4]

---

[4]In his opening brief, Strauss expressly states the following: "[T]he district court dismissed all of the plaintiff's Lanham Act claims that arose prior to September 22, 2015 on the basis that they were time-barred by laches. Plaintiff Strauss is not appealing that part of the district court's order of dismissal." The district court expressly ruled that all the Lanham Act claims except those based on the three 2016 Website Statements are barred by laches. In an argument directly at odds with the concession in his opening brief, Strauss relies solely on statements other than the 2016 Website Statements to support his contention that Angie's List made misrepresentations that influenced consumers to purchase services *from Angie's List*. Accordingly, we conclude those arguments are waived and decline to address them. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008) ("[W]aiver is accomplished by intent . . . ." (quotation
(continued...)

Instead, he challenges the continued viability of the 2000 *Proctor & Gamble* test in light of the Supreme Court's 2014 decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

In *Lexmark*, the Supreme Court addressed the question of whether the plaintiff had statutory standing to sue the defendant for alleged false advertising in violation of the Lanham Act. 572 U.S. at 128. The Court rejected all three standing tests used by the federal circuit courts, including one requiring the plaintiff to be a direct competitor of the defendant. *Id*. at 134-37. Strauss argues *Lexmark*'s holding altered the *Proctor & Gamble* test by eliminating the requirements that the challenged statements be made by a defendant in commercial competition with the plaintiff[5] and that the statements be made for

---

[4](...continued)
omitted)). Strauss does not advance any argument that the 2016 Website Statements were made for the purpose of influencing consumers to buy Angie's List's goods or services.

[5]In cases decided after *Lexmark*, both the Fourth and Sixth Circuit Courts of Appeals have adopted only three prongs of the *Gordon & Breach* test, discarding the requirement that the defendant "be in commercial competition with the plaintiff." *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 256-57 (4th Cir. 2017); *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 801 (6th Cir. 2015) (declining "to adopt the requirement that the parties be in competition" because the Lanham Act "nowhere requires such a showing"). The Fourth Circuit reasoned that post-*Lexmark*, the competitive relationship between the parties is relevant to standing, not "whether a communication is advertising." *Handsome Brook Farm, LLC*, 700 F. App'x at 256. In his opening brief, Strauss makes the unsupported assumption that *Lexmark* "clearly eliminates prong number two" from the *Proctor & Gamble* test. But, as we conclude, *infra*,

(continued...)

the purpose of influencing consumers to buy *defendant's* goods or services. The answer as to whether *Lexmark* abrogated the *Proctor and Gamble* test for determining what constitutes commercial advertising is answered by the *Lexmark* decision itself. In *Lexmark*, the Supreme Court expressly declined to address whether the plaintiff's representations were commercial advertising or promotion, stating:

> Lexmark contends that [Plaintiff's] allegations failed to describe "commercial advertising or promotion" within the meaning of 15 U.S.C. § 1125(a)(1)(B). That question is not before us, and we express no view on it. We assume without deciding that the communications alleged by [Plaintiff] qualify as commercial advertising or promotion.

572 U.S. at 123 n.1. Instead, *Lexmark* addressed only the question of statutory standing, *id*. at 128, an issue not presented in this appeal.

The *Proctor & Gamble* test aids the courts in determining whether particular representations constitute "commercial advertising or promotion," as required by the Lanham Act. 15 U.S.C. § 1125(a)(1)(B); *see also Proctor & Gamble*, 222 F.3d at 1273. The *Lexmark* Court specifically declined to address the question of whether the defendant's communications were commercial

---

[5](...continued)
the *Proctor & Gamble* test has not been abrogated by *Lexmark*. Even if an argument could be made that the standing holding in *Lexmark* cannot be reconciled with the second prong of the *Proctor & Gamble* test, that issue is not properly before this panel.

-10-

advertising or promotion. Thus, it is not superseding authority on the issue of the appropriate test to apply. Because "[w]e are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court," this court and the lower courts must continue to apply the *Proctor & Gamble* test to determine what constitutes commercial advertising or promotion for purposes of a Lanham Act false advertising claim. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). Since Strauss does not challenge the district court's application of the *Proctor & Gamble* test as to the 2016 Website Statements, *see* n.4 *supra*, we conclude his claims were properly dismissed.

**IV.   Conclusion**

The judgment of the district court dismissing Strauss's class action complaint is **affirmed**.